**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**GERARDO JOSUE FIGUEROA-GONZALEZ,**

*Petitioner*,

v.

**LUIS SOTO**, ***et al.***,

*Respondents*.

No. 26-cv-13248

**ORDER**

**O'HEARN, District Judge.**

This matter comes before the Court upon the Petition for Writ of Habeas Corpus, (ECF No. 1), and subsequent request for immediate release following his bond hearing, (ECF No. 14); and

**WHEREAS**, in his Petition, Petitioner challenges the lawfulness of his arrest on October 6, 2026, and alleges that ICE failed to conduct an individualized custody determination before detaining him. (ECF No. 1 at 5–9). Following a bond hearing, on November 13, 2026, at which an Immigration Judge ("IJ") denied bond based on dangerousness, Petitioner filed a supplemental letter arguing that the hearing was fundamentally unfair. (ECF No. 14). Specifically, Petitioner alleges that the IJ relied almost exclusively on his single DUI conviction from May 2025 and the absence of documentation concerning the underlying offense, without meaningfully considering his testimony regarding rehabilitation, his lack of subsequent arrests, and whether he presently poses a danger to the community. (*Id.* at 1–3). Petitioner contends that the IJ's failure to conduct a meaningful, individualized assessment violated his Fifth Amendment due process rights and requests immediate release or, alternatively, a new bond hearing. (*Id.* at 3); and

**WHEREAS**, for the reasons set forth below, the Court agrees with Petitioner that ICE did

not conduct an individualized custody determination and, although a subsequent bond hearing cannot cure such a deficiency, *see A.J.P.S. v. Benzel*, No. 26-11858, 2026 WL 3131270, at *4 n.3 (D.N.J. Oct. 19, 2026), even if it could, the subsequent bond hearing was fundamentally unfair. As Petitioner has now been detained for approximately forty-eight days, the Court will therefore order his immediate release; and

**WHEREAS**, the Court specifically directed Respondents to explain whether and how ICE conducted an individualized custody determination before detaining Petitioner. (ECF No. 8). In doing so, the Court explained that the Form I-286, standing alone, was insufficient to establish that ICE assessed Petitioner's danger to the community or flight risk and directed Respondents to produce relevant contemporaneous records and/or declarations from appropriate officials. (*Id.* (citing *A.J.P.S.*, 2026 WL 3131270)). In response, Respondents produced a Risk Classification Assessment ("RCA") form, (ECF No. 9-1), but did not provide any explanation as to what the RCA is, how it is utilized, what information it considers, or how that assessment informed ICE's decision to detain Petitioner. Indeed, Respondents acknowledge that the RCA was not initiated until *after* ICE issued the Form I-286 reflecting its custody determination. (ECF No. 9). Thus, as a practical matter, it is unclear how the RCA could have informed the decision to detain Petitioner when that decision had apparently already been made. Respondents provided no declaration from any officer who supposedly performed an individualized custody determination or any other evidence as to what was considered; and

**WHEREAS**, the Court again makes clear that it does not decide what quantum of evidence may sufficiently establish that ICE conducted an individualized custody determination. However, on this record, it is clear that Respondents have failed to show an individualized custody determination. The mere production of an RCA form, without any explanation of how or whether

it was even considered in making the initial custody determination, is insufficient to establish that ICE meaningfully assessed Petitioner's danger to the community or risk of flight before deciding to detain him;[1] and

**WHEREAS**, the Government further argues that Petitioner's bond hearing was fundamentally fair and that any challenge must be raised in an appeal to the Board of Immigration Appeals ("BIA"). (ECF No. 18 at 3); but

**WHEREAS**, although 8 U.S.C. § 1226(e) precludes judicial review of discretionary bond determinations, this Court retains jurisdiction to determine whether a bond hearing was fundamentally unfair in violation of the Fifth Amendment. *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2–3 (3d Cir. Feb. 25, 2022). Due process requires an individualized determination supported by a discernible rational basis in the record. *Quezada Bravo v. Warden, Elizabeth Contract Det. Facility*, ___ F. Supp. 3d ___, No. 26-12309, 2026 WL 3521177, at *4–6 (D.N.J. Nov. 16, 2026); *see also Tursunov v. Butler,* No. 26-00826, 2026 WL 2655077, at *5 (M.D. Pa. Sept. 9, 2026) (Brann, C.J.) ("[T]he IJ has a duty to ensure that a bond determination is based upon a record not so devoid of evidence as to render a default judgment

[1] *See* Order, *Chen v. Mullin*, No. 26-5498 (E.D.N.Y. Oct. 1, 2026), ECF No. 10 at 5–9 (finding an initial custody determination constitutionally deficient where ICE's stated reasons for detention were contradicted by its own records and failed to reflect a meaningful individualized assessment); Order, *Rangel Mendoza v. Venturella*, No. 26-662 (S.D.W. Va. Oct. 30, 2026), ECF No. 25 at 10–11, 16 (holding that the mere production of Forms I-286, without evidence that immigration officers actually considered the detainees' individual circumstances, was insufficient to establish meaningful exercise of discretion under § 1226(a)); Order, *Okeke v. Maldonado*, No. 26-2714 (E.D.N.Y. July 16, 2026), ECF No. 19 at 9–10 & n.3 (finding Respondents' assertion that officers conducted an individualized custody determination insufficient where they failed to identify the factors considered, the officers involved, or when the determination occurred); Order, *Sione Misa N.T. v. Warden, Cal. City Corr. Ctr.*, No. 26-4546 (E.D. Cal. Nov. 12, 2026), ECF No. 13 at 2–5 (finding a procedural due process violation where Respondents produced no Form I-286 or other evidence establishing that an initial custody determination occurred).

against the petitioner.")[2]; and

**WHEREAS**, this Court has previously explained that an individualized bond determination requires more than reliance on an isolated criminal incident without meaningful consideration of the noncitizen's overall circumstances and contrary evidence. *Quezada Bravo*, 2026 WL 3521177, at *8–9. Congress has expressly identified categories of criminal offenses warranting mandatory detention under § 1226(c), while preserving discretionary, individualized custody determinations under § 1226(a). *Id.* at *8. Notably, Congress did not make DUIs an offense warranting mandatory detention under § 1226(c), unless the offense results in death or serious bodily injury. And Congress's express identification of offenses warranting mandatory detention creates an inference that IJs cannot add other offenses and thus create additional categorical grounds for mandatory detention that Congress did not choose to include. *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (applying the familiar canon of *expressio unius est exclusio alterius* or "[t]he expression of one thing implies the exclusion of others"). To permit an IJ to treat an offense not listed in § 1226(c) as dispositive of dangerousness, without meaningfully assessing other evidence in the record, would effectively expand the mandatory detention scheme without congressional authorization. *See Ashley v. Ridge,* 288 F. Supp. 2d 662, 673 (D.N.J. 2003) ("If Congress wanted to make detention mandatory for all aliens who have committed crimes, it would not have devised the present bifurcated system in which mandatory detention is imposed only on a limited class of aliens, presumably those considered most dangerous."); and

**WHEREAS**, the records the Government provided indicate that Petitioner's DUI did not

[2] As the Court has previously found, exhaustion is excused due to the futility of presenting a constitutional claim to the BIA and the irreparable harm of prolonged detention. *Quezada Bravo*, 2026 WL 3521177, at *4.

result in death or bodily injury. (ECF No. 5-1 at 1). His license was suspended for seven months, and he was ordered to complete twelve hours of training and pay a fine. (*Id.* at 3). At his bond hearing, Petitioner testified via an interpreter that he completed the court-ordered educational program, that he no longer consumes alcohol, and that he has not repeated the conduct. (ECF No. 18-1 at 6–8). Nevertheless, the IJ denied bond, emphasizing the general dangers of impaired driving and the absence of independent documentation corroborating Petitioner's testimony.[3] (ECF No. 18-1 at 12); and

**WHEREAS**, the Court does not suggest that IJs may never consider DUIs in evaluating dangerousness. *See Matter of Siniauskas*, 27 I. & N. Dec. 207, 208–10 (BIA 2018). But the IJ must consider "how extensive, recent, and serious" the criminal history is. *Id. Siniauskas* involved a noncitizen with three prior DUI convictions and a subsequent DUI arrest, which materially undermined his claim of rehabilitation. *Id*. Here, by contrast, Petitioner has one DUI conviction, and the record identifies no subsequent arrests or incidents of impaired driving. As the Court has previously explained, due process required a meaningful assessment of Petitioner's present dangerousness in light of the record as a whole. *See Quezada Bravo*, 2026 WL 3521177, at *8–9. Here, the IJ's reliance on Petitioner's sole DUI conviction to establish dangerousness is tantamount to mandatory detention under § 1226(c) and thus did not provide the individualized determination that § 1226(a) and due process require;

---

[3] The IJ stated that "there's no report that can show us whether there was damage, whether there was any kind of property damage or any kind of injury. All we have is what the respondent himself is saying." (ECF No. 18-1 at 12). However, Respondents produced records before this Court corroborating Petitioner's testimony that no injuries resulted from the DUI incident, specifically, the municipal court records identify no injury-related charges. (ECF No. 5-1). Although it appears that these specific records were not presented to the IJ at the bond hearing, they were readily available to Respondents and provide at least some independent corroboration of Petitioner's testimony. Moreover, as Petitioner notes, the records available to the IJ, including the municipal court disposition and the I-213 do not indicate any injury resulting from the DUI.

**WHEREAS**, considering the deficiencies identified above, and the length of his current detention without adequate process, the Court finds that the appropriate remedy is immediate release and, in the event of any re-detention, Respondents must bear the burden of establishing, by clear and convincing evidence, that continued detention is necessary because Petitioner presents a danger to the community or a flight risk[4]; therefore

**IT IS** on this 24th day of November, 2026,

**ORDERED** that Respondents shall **IMMEDIATELY RELEASE** Petitioner from custody, and no later than 8:00 p.m. on November 25, 2026, and file confirmation on the docket. Respondents shall not arrest or re-detain Petitioner for a period of fourteen (14) days to effectuate meaningful relief and prevent circumvention of the relief granted herein. In the event of any re-detention under § 1226(a), Petitioner shall be promptly afforded a bond hearing at which the Government bears the burden of proof by clear and convincing evidence. This Court shall retain jurisdiction and Petitioner may move to re-open these proceedings in the event of any re-detention in violation of this Order.

Christine P. O'Hearn

**CHRISTINE P. O'HEARN**
**United States District Judge**

[4] Because the Court resolves the Petition on these grounds, it need not and does not reach any other claims raised. The Court further reserves the right to supplement this brief Order to further set forth its reasoning.